Michael D. Rounds (California Bar No. 133972)
Melissa P. Barnard *(pro hac vice)*
Adam K. Yowell *(pro hac vice)*
WATSON ROUNDS
One Market-Steuart Tower Suite 1600
San Francisco, CA 94105
Telephone: (415) 243-4090
Fax:        (415) 243-0226
mrounds@watsonrounds.com
mbarnard@watsonrounds.com
ayowell@watsonrounds.com

*Attorneys for Plaintiff*
GRAPHON CORPORATION

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRAPHON CORPORATION, a Delaware corporation, | Case No. 3:10-CV-01412-JSW |
| Plaintiff, | |
| v. | **GRAPHON'S OPPOSITION TO JUNIPER'S MOTION TO STAY** |
| JUNIPER NETWORKS, INC., a Delaware corporation, and JUNIPER NETWORKS (US), INC., a California corporation, | |
| Defendants. | |

## I.    INTRODUCTION

Juniper's Motion is a transparent attempt to use a request for a patent reexamination as an excuse to once again bring efforts by GraphOn to obtain relief for the infringement of its patents to a grinding halt. *Cf. Alps South, LLC v. The Ohio Willow Wood Co.*, 2010 WL 2465176, at *1 (M.D. Fla. Jun. 16, 2010) ("There is no per se rule that patent cases should be stayed pending

reexamination because such a rule would invite parties to unilaterally delay and derail litigation."). Juniper has admitted that it uses reexamination proceedings as a tactic to run up the cost of litigation for a patent holder, and its delay in bringing the reexamination at issue is proof that Juniper's only motive here was to create a tactical disadvantage for GraphOn. On this basis alone, this Court should deny Juniper's belated and bad-faith Motion to Stay.

Without question, Juniper's Motion fails to satisfy the three factors that this Court must consider when deciding a motion to stay. First, a stay would substantially prejudice GraphOn. Juniper waited over sixteen months and transferred this case two different times before requesting the stay. This District has determined that a delay of five months is too long and has denied a stay where the moving party had stalled the action for almost one year with two transfers. *Sorensen v. Ampro Tools Corp.,* 2009 WL 605831, 1-2 (N.D.Cal. 2009); *Affinity Labs of Texas v. Apple, Inc.*, 2010 WL 1753206 (N.D. Cal. 2010). This sixteen-month delay, when coupled with the time spent on the reexamination process, would likely prevent any discovery in this case for nearly six years. Those six years are just to get to the examiner's final decision. Should either party appeal that decision the delay will continue for yet more years. All told, forcing GraphOn to potentially wait a decade for judgment is a ridiculous proposition.

Second, the reexaminations will not simplify all of the issues in this case. *See, e.g.*, *Esso Corp. v. Berkeley Forge & Tool, Inc.*, 2009 WL 3078563, at *3 (N.D. Cal. Sep. 28, 2009) ("[T]o truly simplify the issues . . . the outcome of the reexamination must finally resolve all issues in the litigation."). Initially, Juniper's reexamination request is for only one of the four patents in this case. Even when Juniper gets around to filing the others, probably shortly after this Opposition is filed so that Juniper can prattle on unanswered in the reply about them, the fact remains that this Court will almost certainly have claims left to try. Furthermore, although

2

Juniper is bound by the reexamination decisions, nothing stops it from throwing in a few new pieces of prior art and making all the same arguments the examiner rejected.

Juniper's reliance on statistical evidence from the USPTO cannot hide Juniper's failure to offer a cogent explanation as to how the reexaminations will simplify the issues in this case. *See Regalo Intern., LLC v. DEX Products, Inc.*, 2009 WL 2951107, at *2 (D. Minn. Sep. 8, 2009) ("DEX offers no specific explanation of how the reexamination proceedings will simplify particular issues in this litigation.") (denying stay); *Esso Corp.*, 2009 WL 3078563, at *3 ("Given the fact that the average time for completing the reexamination process exceeds three years, coupled with the possibility that at least some claims may have to be litigated notwithstanding reexamination, the Court concludes that the second factor weighs against a stay."). The bottom line is that Juniper's conduct is going to force this Court to address most of the same arguments as the examiner, and the only question is when that will happen.

Third, by ignoring the facts that (1) GraphOn has been engaged in a lengthy and costly struggle to enforce its patents, (2) initial disclosures and production under local patent rules had occurred in both the Virginia and Texas portions of this case over a year ago, and (3) Juniper's tactical maneuverings to transfer the case, not once, but twice, Juniper has taken an insupportably narrow view of the procedural history of this case. In fact, this dispute is significantly advanced. *See Power Intergration Inc v. Fairchild Semiconductor Intern. Inc.*, 2008 WL 5335400, at *2 (D.Del. Dec. 19, 2008) ("These factors do not neatly apply to the circumstances presented here, largely because of the lengthy and extensive history of litigation between PI and Fairchild.") (denying stay); *Esso Corp*, 2009 WL 3078563, at *3 (denying stay even where the case was "in its embryonic stage"); *cf. Tokuyama Corp. v. Vision Dynamics*, 2008 WL 4452118, at *3 (N.D. Cal. Oct. 3, 2008) (recognizing that "the parties have a

3

GRAPHON'S OPPOSITION TO
JUNIPER'S MOTION TO STAY
3:10-CV-01412-JSW

significant prelitigation history that involves time and expense invested in the dispute over the alleged infringement and invalidity of the patent. They began communicating about the alleged infringement of the '017 patent over a year and a half ago.") (denying stay).

Finally, Juniper's counsel has misrepresented numerous facts throughout their Motion. Juniper's Introduction and Statement of Facts ignores any procedural history that occurred in Virginia and rewrites the procedural history in Texas to the point where it is almost unrecognizable. In fact, GraphOn has been forced to dedicate an entire section of this Opposition just to correct them all. Once the irrelevant and inaccurate statements are stripped from the Motion, it is clear that the Motion is premature and deficient. A stay in this case would only delay an inevitable trial by years, impose unfair prejudice upon GraphOn and reward Juniper for its dilatory tactics in bringing the Motion and abusing the reexamination process. A balance of the three factors weighs decidedly against a stay, and the Motion must therefore be denied.

## II.    STATEMENT OF FACTS

### A.    Juniper's Strategy in Defending Patent Suits

Juniper's in-house counsel, Scott Coonan, has candidly explained that Juniper brings motions, reexaminations, and even entire lawsuits solely to harass opposing parties and drain their resources in an attempt to force settlements and avoid addressing cases on their merits. This is a strategy that Juniper uses regularly. Scott Coonan, Juniper Networks' Director of IP Litigation and Licensing, while acting as a panelist at a patent litigation seminar, has stated that the lawyers "need to be creative and they need to be looking for opportunities that both keep the opponent off balance and also drive up their costs." Barnard Decl. ¶ 8, Exhibit 1, Incisive Media

GRAPHON'S OPPOSITION TO
JUNIPER'S MOTION TO STAY
3:10-CV-01412-JSW

Web Seminar Transcript, p. 13, dated June 17, 2009, attached hereto and incorporated herein by reference. Mr. Coonan explained his strategy as follows,

> "So reexamines, obviously, is a way to gain leverage. You want to exert pressure, especially if you're dealing with a plaintiff who is paying, who has his, its firm on a contingency basis. That firm doesn't want to front a lot of costs before it sees a pay day so you want to try to drive those costs up as much as possible. This is not rocket science."

Barnard Decl. ¶ 8, Exhibit 1. Coonan went further stating,

> "We filed, at Juniper we filed reexamines on patents that were in suit and we've also filed a reexamine on a patent that was not in suit that we thought the opponent was quite fond of and would begin asserting against others, not even Juniper because we don't, we didn't believe that it actually covered anything that we were selling but we thought it was just another way to gain leverage against that aggressor and drive up their costs."

Barnard Decl. ¶ 8, Exhibit 1. Coonan further explained, "[t]he only cases in which we [Juniper] are actually plaintiffs are cases that were filed to gain leverage against parties. . . ." Barnard Decl. ¶ 8, Exhibit 1, p. 7. As will be explained more fully below, Juniper's conduct throughout the history of this case demonstrates classic examples of Juniper's improper tactics, all undertaken only to drive up the costs and attempt to gain leverage against GraphOn. The reexaminations and this Motion to Stay are more of the same improper tactics – nothing more.

**B.   Historical Relationship Between GraphOn and Juniper**

GraphOn and Juniper have been involved in several different lawsuits in several different jurisdictions dating back to 2007. On May 31, 2007, GraphOn sued Juniper Networks, Inc. ("Juniper") in the Eastern District of Texas for infringement of United States Patent Nos. 5,826,014 (the "014 Patent"), 6,061,798 (the "798 Patent"), and 7,028,336 (the "336 Patent"), which relate to firewall technology. On July 25, 2008, GraphOn filed a First Amended Complaint removing its claim for infringement of the '336 Patent after learning that the '336

GRAPHON'S OPPOSITION TO
JUNIPER'S MOTION TO STAY
3:10-CV-01412-JSW

Patent may be missing a link in its priority data through inadvertence in the prosecution process. *See* Motion for Leave to File First Amended Complaint (Dkt. # 29, 4:10-CV-00384-SBA (the '384 Action")).  This error has since been corrected, and the '336 Patent stands valid and enforceable.  Barnard Decl. ¶ 10, Exhibit 3.  Juniper counterclaimed for declaratory judgment of invalidity, non-infringement, and unenforceability of the claims of the '014 and '798 Patents and for declaratory judgment of invalidity and unenforceability of the claims of the '336 Patent. (Dkt. #50, the '384 Action).

In keeping with its practice of seeking leverage and running up the costs, Juniper filed a Motion for Preliminary Stay in November of 2008, which the Texas court denied.  The Texas court held that it was not persuaded that a stay was appropriate because GraphOn would suffer prejudice as a result of the stay and it was not clear that a stay would lead to a simplification of issues in this case.   Order (Dkt. # 133, the '384 Action).  The fact that GraphOn was not seeking injunctive relief did not alter the court's view of this matter.  *Id.*  The court concluded that the patentee has an interest in a prompt resolution of its claims for infringement, and the defendant is free to assert its invalidity defenses in the trial of this case.  *Id.*

Two years after the Texas suit was filed, Juniper brought a motion to transfer.  Motion to Transfer (Dkt. # 72, the '384 Action).   The court denied the motion because it did not like Juniper's gamesmanship in its forum-shopping.  The court explained that by filing suit in the Eastern District of Virginia, "Juniper has demonstrated that it is not inconvenient to litigate the dispute across the country, away from its party witnesses and its sources of its proof.  It also does not appear that Juniper desires to have a local court resolve this dispute with its fellow corporate citizen in California."  *Id.*  The Texas court concluded that it viewed "with some caution Juniper's convenience arguments when the court examines the totality of the circumstances

6

GRAPHON'S OPPOSITION TO
JUNIPER'S MOTION TO STAY
3:10-CV-01412-JSW

existing between these two parties." *Id.*[1]

## C.    The Origins of the Present Case

### 1.    Virginia

Juniper retaliated to GraphOn's suit by searching for and buying a patent solely to sue GraphOn in the Eastern District of Virginia.  Juniper sued GraphOn in March of 2009, in the Eastern District of Virginia for allegedly infringing Juniper's Patent No. 6,243,752.  (Dkt. #1). Juniper admitted that it acquired the patent for the Virginia case as "part of its overall strategy in defending the Texas lawsuit, and for the singular purpose of asserting the patent against GraphOn."  GraphOn's Reply to Juniper's Response to GraphOn's Motion to Consolidate (Dkt. #130, the '384 Action).  Specifically, Juniper described the acquisition of the patent as a "maneuver within the Texas lawsuit because Juniper could have brought its infringement claim in that action." *Id.*

GraphOn counterclaimed against Juniper on the four patents-in-suit in the Virginia case. The '573 patent is part of the same family as the '798 and '014 patents in GraphOn and Juniper's other case in this district, and involves similar technology.  The other three patents – the '378, '847 and '737 – all relate to a different area of firewall technology, called multi-homing.  This feature is especially useful when firewall technology is used on router and switch products, just as Juniper uses it with many of its accused products.  The two families deal with separate subareas in the firewall technology space, and generally have different prior art.

Juniper filed a Motion to Sever and Motion to Transfer GraphOn's counterclaims with the

---

[1] The Texas court later sua sponte transferred the case to the Northern District of California, citing the dismissal of Juniper's case in the Eastern District of Virginia as the basis for its decision to reconsider its prior order.  (Dkt. #61, the '384 Action).

GRAPHON'S OPPOSITION TO
JUNIPER'S MOTION TO STAY
3:10-CV-01412-JSW

Eastern District of Virginia.  *See* Motion to Transfer (Dkt. #63), p. 2.  Juniper argued that the four patents were more closely aligned with the patents in GraphOn's Texas action and therefore, should be transferred to the same venue where GraphOn's first suit was pending.  *Id.*[2]  While the Motion to Sever and Transfer was pending, the parties negotiated and filed the Discovery Plan (Dkt. #42, #53) and the Confidentiality Stipulation and Protective Order (Dkt. #51) was entered by the court.  On June 24, 2009, the Virginia court severed the counterclaims and transferred them to the Eastern District of Texas. Order (Dkt. #57).

2.      *Texas*

On June 29, 2009, the Texas Court received the case from Virginia.  The Discovery Order, Confidentiality Stipulation and Protective Order were still in place and no order by the Court or stipulation by the parties entered that amended or replaced these pleadings.  *See* Docket Sheet (Dkt. #83).  GraphOn served its PR 3-1 Disclosures on August 26, 2009.  *See* Notice of Compliance (Dkt. #59).   Juniper did not move the case along or do anything in furtherance of its case, except for its lone filing to transfer the case **a second time**, this time to California.  Motion to Transfer (Dkt. #63).  In keeping with the recent line of decisions from the Federal Circuit on venue in patent cases, the Texas court granted the Motion to Transfer on February 25, 2010 (Dkt. #78), and the case was transferred to the Northern District of California on March 18, 2010 (Dkt. #83).

3.      *California*.

Once the case was moved to California, the case was assigned to the Honorable Edward

---

[2] Juniper alternatively asked the Court to move the case to California, but this was a conditional request. (Dkt. #63).

M. Chen and an Initial Case Management Conference was set.   Barnard Decl. ¶ 4.   Shortly before the conference was to be held, Juniper declined to proceed before a magistrate judge and the case had to be reassigned and the initial case conference reset.   The parties were also forced to obtain extensions on some of the deadlines relating to the initial case conference.   *Id.*   The initial case conference was rescheduled, but it has been continued.   *Id.*   The parties have conducted one ADR phone conference and a second conference is scheduled for September 20, 2010.   Barnard Decl. ¶ 5.   There have been some discussions about GraphOn filing an amended complaint to drop the '573 patent, which from the firewall family of the 2007 Texas case, but GraphOn is still evaluating its position on this issue.   *Id.*   Juniper also has admitted that it is contemplating amending its answer to assert a countersuit for declaratory judgment that the patents-in-suit are not infringed and are invalid and unenforceable, including allegations of inequitable conduct.   *See* Joint Case Management Statement (Dkt. #106).

On August 6, 2010, the same day the Joint Case Management Conference Statement was filed, Juniper filed an *inter partes* reexamination request with the PTO seeking a reexamination on just one of the four patents-in-suit, U.S. Patent No. 7,249,378 (the '378 Patent).   *See* Motion, p. 5.   Juniper claims the reexamination is based on nineteen new prior art references, which it alleges presents substantial new questions of patentability.   *Id.*   To date, this is the only reexamination request involving the patents-in-suit.   Juniper claims that it is going to file reexamination requests on at least two of the other patents, but to date has not done so.   In short, Juniper is presently seeking to stay the entire case based upon the reexamination of just one of the four patents in suit.

Also on August 6, 2010, Juniper filed the present Motion to Stay.   Juniper's Motion attempts to trump up a statement contained in the Joint Case Management Statement that the

GRAPHON'S OPPOSITION TO
JUNIPER'S MOTION TO STAY
3:10-CV-01412-JSW

parties agree that the 2007 Texas case and the present case involve the same parties, similar and/or related patents and similar evidence.  Motion, p. 2, ll. 9-10, p. 4, ll. 21-23, p. 10, ll. 1-3. Juniper attempts to use this statement to imply that the current reexamination request has merit since Juniper filed a reexamination request in the 2007 Texas case and the two cases are arguably similar.  It is true that between the two cases, the parties, Juniper's accused products and the source code are the same or similar.  Barnard Decl. ¶ 7.  It is also true that '573 patent is from the same firewall family as the patents involved in the 2007 Texas case.  However, the remaining patents in the present suit are from a different multi-homing family.  *Id.*  The technology and prior art in the present suit is different than that in the 2007 Texas case.  *Id.*  The infringement claims are different as well.  *Id.*  As such, the reexaminations are not at all the same, and Juniper's manipulation of this out of context sentence from the Joint Case Management Statement to argue for a stay in this case is meritless.

## III.    ARGUMENT

Courts have the discretion to decide whether to stay judicial proceedings pending patent reexaminations.  *Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc.,* Case No. 03-1431, 2007 WL 1655625 *2 (N.D.Cal.2007).   In determining whether a stay pending reexamination is appropriate, courts consider three factors: (1) whether staying the case would cause undue prejudice or present a tactical disadvantage to the nonmoving party; (2) whether a stay simplifies the issues in the case; and (3) whether discovery is complete and a trial date has been set.  *Telemac Corp. v. Teledigital, Inc.,* 450 F.Supp.2d 1107, 1111 (N.D.Cal.2006); *Tomco Equip. Co. v. Southeastern Agri-Sys., Inc.*, 542 F. Supp. 2d 1303, 1307 (N.D. Ga. 2008).   For the reasons discussed below, a balance of these three factors weighs against granting a stay.

GRAPHON'S OPPOSITION TO
JUNIPER'S MOTION TO STAY
3:10-CV-01412-JSW

**A.      A Stay Will Substantially Prejudice Plaintiff And Was Sought As A Dilatory
Tactic By Juniper**

Juniper's lone reason as to why GraphOn will not be prejudiced is merely that "nothing
of substance has taken place in this case."  Motion, p. 7.  Juniper fails to provide a valid
argument that GraphOn will not suffer prejudice and instead merely confuses the first and third
factors.  Also, as will be explained below, Juniper is wrong about the level of activity in this case
as there has been significant activity.  Regardless, Juniper's simplistic approach to addressing the
prejudicial prong ignores the significant hardships a stay would impose on GraphOn.  First, the
stay would cause further unwarranted delay.  The USPTO has not yet granted Juniper's one
request for reexamination, and so Juniper's motion is premature. *See* 35 U.S.C. § 318 (noting
that a stay may be appropriate once an order for reexamination has been *issued* ); *Heinz Kettler
GMBH & Co. v. Indian Indus., Inc.,* 592 F.Supp.2d 880, 882 (E.D.Va.2009) (denying motion to
stay where PTO had not yet granted request for reexamination).

Even if the other reexaminations are finally filed and all are granted, the process will
cause severe delay.  As of December 31, 2009, the average length of an *inter partes*
reexamination is 36.2 months.  *Affinity Labs of Texas v. Apple, Inc.*, 2010 WL 1753206 (N.D.
Cal. 2010).  The average length of delay is likely to increase considering the steady rise in the
number of reexaminations filed in the past several years.  *Id.*  The delay will likely further extend
to over six years if either party appeals the determination from the reexamination.  *Id.*

These delays only add to the delay Juniper has already wrought in this case.  Juniper
claims that it has diligently pursued reexamination, but again the facts contradict Juniper's claim.
GraphOn lodged its counterclaims against Juniper in May of 2009, and in the sixteen months
since Juniper has had this case transferred first to the Eastern District of Texas and then to the

11

GRAPHON'S OPPOSITION TO
JUNIPER'S MOTION TO STAY
3:10-CV-01412-JSW

Northern District of California.  Juniper could have filed the request for reexamination at any point in its procedural maneuverings, yet Juniper waited until August of 2010 to file its one request for an *inter partes* reexamination.

Juniper's failure to seek reexamination at any point in the last year and a half raises the inescapable inference that the timing of the current request is tactically driven.  *See Ultra Products, Inc. v. Antec, Inc.*, 2010 WL 1688538, 2 -4  (N.D.Cal.2010); *Esco Corp. v. Berkeley Forge & Tool, Inc.,* 2009 WL 3078463, No. 09-1635, at *3 (N.D.Cal. Sept. 28, 2009); *Telemac,* 450 F.Supp.2d at 1111 (denying motion to stay because reexamination delay placed plaintiff at tactical disadvantage).  In addressing the prejudice factor, courts are conscious of procedural and tactical manipulations of this sort.   For example, in *Affinity Labs of Texas v. Apple, Inc.*, 2010 WL 1753206 (N.D. Cal. 2010), a stay was denied where Apple waited six months before filing its reexam petitions and in *Esco Corp. v. Berkeley Forge & Tool, Inc.,* 2009 WL 3078463, No. 09-1635, at *3 (N.D.Cal. 2009), a stay was denied where defendants waited five months to file for reexamination.  In *Sorensen v. Ampro Tools Corp.,* 2009 WL 605831, 1-2  (N.D.Cal. 2009), the court denied a stay because the moving party had stalled the action for almost one year with two transfers, much like Juniper has done in this case.  Juniper attempts to put GraphOn at a tactical disadvantage by forcing it to wait many years, while evidence continues to degrade and erode, purely as a tactical maneuver to obtain leverage.  The undeniable prejudice to GraphOn

GRAPHON'S OPPOSITION TO
JUNIPER'S MOTION TO STAY
3:10-CV-01412-JSW

places this factor heavily against granting a stay.[3]

In addition to the undue prejudice the delay will cause GraphOn, Juniper's motives in seeking a stay are purely to place GraphOn in a disadvantageous position.  Juniper claims that there is "no evidence that Juniper has a dilatory motive or that its request will tactically disadvantage GraphOn."  Motion to Stay, p. 8.  This statement defies all logic given the facts of this case, Juniper's admitted tactics, and the history between the parties.  First, this entire case is the direct result of tactical maneuvering and game-playing by Juniper to try and drive up the cost to GraphOn of enforcing its patents.  Juniper's suit in Virginia was for the sole admitted purpose of retaliating against GraphOn for bringing a suit against Juniper in the Eastern District of Texas in 2007.  Reply to Juniper's Response to GraphOn's Motion to Consolidate (Dkt. #130, the '384 Action).

As explained Juniper's reexaminations and stay request is just another weapon that Juniper uses in its war of attrition against patent holders who dare assert their rights against Juniper.  Mr. Coonan's statements bear a lock-step similarity to the procedural history of this case.  Quite simply, Juniper's reexaminations and Motion to Stay have absolutely nothing to do with the merits of this case, and everything to do with Juniper's core litigation strategy of abusing judicial process to *avoid* the merits.

Finally, Juniper claims that "because virtually nothing of substance has taken place in this

---

[3] Juniper also claims that GraphOn probably won't seek an injunction in this case, because it did not seek one in a prior case.  Motion, p. 8, n. 2.  At a minimum, this is pure speculation.  However, more than likely, it is a result of additional gamesmanship surrounding the Joint Case Management Conference.  GraphOn had included in its version of the Joint Case Conference Statement that it brought a claim for injunctive relief.  Juniper tried to eliminate this statement, even thought it was factually and procedurally correct.  GraphOn demanded that it be reinserted into the Statement, because it had not waived its right to seek injunctive relief.  Barnard Decl. ¶ 13.  Hence, Juniper has no basis for its claim that GraphOn would not seek injunctive relief and knew this before filing the Motion with this Court.

GRAPHON'S OPPOSITION TO
JUNIPER'S MOTION TO STAY
3:10-CV-01412-JSW

case, the parties' expenditures on fees have been minimal."  Motion, p. 7 Again, Juniper is hard pressed to make this statement with all candor to the Court unless it chooses to entirely ignore all the proceedings that occurred in Virginia and Texas prior to the case being transferred to the current Court.  GraphOn was hounded and harassed at every turn in the Virginia portion of this case, with Juniper contesting even the most mundane of issues.  Barnard Decl. ¶ 6.  GraphOn expended significant sums of money litigating the Confidentiality Stipulation and Protective Order and the Discovery Schedule, which were directed at the countersuit as well as the underlying suit.  *Id.*

Furthermore, GraphOn had to defend and oppose Juniper's numerous motions to transfer this case from not one, but two different jurisdictions.  *Id.*  Juniper was unable to oppose GraphOn's Motion for Summary Judgment and ultimately conceded that the Virginia suit was unfounded, serving GraphOn with a covenant not to sue that immediately led to the dismissal of the Virginia case.  *Id.*  Juniper's actions prompted GraphOn to file an exceptional case motion and request $1,500,000 in attorneys' fees and costs, and GraphOn's Motion for Attorneys' Fees is currently on appeal.  *Id.*  Additionally, Juniper's absurd restrictions on GraphOn's review of Juniper's source code in the 2007 Texas case forced GraphOn to file a Motion to Compel, which the Texas court granted in substantial part before transferring the case.   GraphOn accumulated almost $1,000,000 in expert fees as a result of Juniper's conduct before the Court's ruling, fees that are related to the same analysis of code that will need to be done in the present case.  To claim that the fees spent by the parties were "minimal" is staggeringly inaccurate.

## B.     The Reexam Is Unlikely to Simplify the Issues In This Case

Juniper is mistaken in contending that the reexamination is likely to simplify any issues

GRAPHON'S OPPOSITION TO
JUNIPER'S MOTION TO STAY
3:10-CV-01412-JSW

in this case.  This Court would not substantively benefit from the expertise of the USPTO, as it is very likely that at least some claims will survive to be tried.  Given such circumstances, the reexamination fails to simplify anything in this case. *See Regalo Intern., LLC v. DEX Products, Inc.*, 2009 WL 2951107, at *2 (D. Minn. Sep. 8, 2009) ("DEX offers no specific explanation of how the reexamination proceedings will simplify particular issues in this litigation.") (denying stay); *Esso Corp*, 2009 WL 3078563, at *3 ("Given the fact that the average time for completing the reexamination process exceeds three years, coupled with the possibility that at least some claims may have to be litigated notwithstanding reexamination, the Court concludes that the second factor weighs against a stay."). The only reexamination result that will obviate the need for this Court to try this case is if all the patents are invalidated in full, and Juniper has not even bothered to file its other reexaminations yet.

The concept of reexaminations was noble:  a faster and cheaper way to determine the validity of patents using the USPTO's expertise before using a Court's scarce resources.  The reality is that this Court can try this case and the parties can take their appeal, resolving ALL of the issues, before the reexaminations have concluded and possibly eliminated some of the claims at issue.  Juniper simply cannot persuasively demonstrate that the results of reexamination will simplify the instant litigation such that a stay would be helpful.  *See Ultra Products*, 2010 WL 1688538 at 4.  The potential for minimal simplification of issues in this case does not outweigh the other two factors, which both weigh heavily in favor of a stay.

### C.    This Case Has Been Well-Developed and Is Significantly More Advanced Than its Discovery Status Indicates

The procedural posture of the litigation weighs against a stay. Juniper has known of the

15

patents-in-suit and GraphOn's efforts to enforce them for years.  The case is over 16 months old and the parties had been operating under a Scheduling Order in place since May of 2009. GraphOn has served Initial Disclosures with respect to its countersuit and also has served infringement contentions related to its countersuit.  So while Juniper is technically correct in noting that little discovery has taken place in this case, it is misleading to imply this case is in its infancy.

Furthermore, Juniper incorrectly informs the Court that the parties have invested minimal amounts of money in this litigation.  *See* Motion p. 6.  As explained above, while the patents-in-suit were involved in the Virginia action, Juniper harassed GraphOn at every turn.  GraphOn expended significant sums of money litigating the Confidentiality Stipulation and Protective Order and the Discovery Schedule, which were directed at the countersuit as well as the underlying suit.  Barnard Decl. ¶ 6.  GraphOn had to defend not one, but two separate motions to transfer in two distinct jurisdictions.   Juniper could have requested transfer to California outright at the initial juncture, but instead through tactical maneuverings, requested an additional stop in Texas.  All these tactics were done at substantial costs and expense to GraphOn.

Furthermore, GraphOn has expended a million dollars in source code review of Juniper's infringing products.  While Juniper may argue that this review occurred in the 2007 Texas case, it is the same source code that would apply in this case.  GraphOn certainly was not going to duplicate its efforts at such a high price tag.  The cost and time spent on this review should not be overlooked in this case.  For these reasons, this factor does not weigh in favor of granting a stay.

GRAPHON'S OPPOSITION TO
JUNIPER'S MOTION TO STAY
3:10-CV-01412-JSW

**D.     Other Considerations Also Weigh Against Granting a Stay**

Juniper made a reference to the patent reexamination legislation's sponsors' favorable view of granting stays. *See* Motion to Stay, p. 5.  The unfortunate reality is that reexaminations have not lived up to their sponsor's expectations. As noted above, the reexamination process is likely to take **longer** than a trial would, without even including the time for any of the available appeals.

Furthermore, the reexamination process is becoming a strategic tool used by infringers to derail a patent holder's right to protect infringement of its invention.  Federal Circuit Judge Newman has noted that routinely granting stays renders the reexamination process "subject to inequity, if not manipulation and abuse, through the delays that are inherent in PTO Activity." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1305 (Fed. Cir. 2009) (Newman, J, concurring).  Granting a stay in cases such as this only insures more reexamination petitions will be filed, further increasing delays in the USPTO, perpetuating a vicious cycle that continues to degrade the original purpose of the reexamination process.  Juniper's conduct embodies the very manipulation and abuse Judge Newman describes, and must not be rewarded.

An opinion from the Central District of California, no doubt recognizing the dangers inherent in granting stays too freely, explained as follows:

> "The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Unidisco v. Schattner*, 210 U.S.P.Q. 622, 629 (D. Md. 1981) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936)). . . .

> These risks of wasted effort are inherent when more than one Tribunal considers the same questions, and in every case, the expertise of the PTO would be helpful. However, these inherent risks and benefits do not necessarily mean that in every case a stay will simplify the issues.  As some courts have noted, when reexamination

17

potentially will eliminate only one issue out of many, a stay is not warranted. . . . *Imax Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1032-33 (C.D. Cal. 2005). These observations are equally applicable here. Considering all of the factors, a stay in this case significantly compromises GraphOn's rights based on nothing more than the hollow arguments of a company that admittedly uses reexamination merely as a harassment tool and bargaining chip against patent holders.

### E.     Factual Inaccuracies, Misrepresentations of Juniper

From a review of the factual allegations contained in Juniper's Motion to Stay, it is as if Juniper and GraphOn are involved in two entirely different cases. This could stem from the fact that Juniper's current counsel was not counsel for Juniper at the case's inception in Virginia and therefore, they do not have intimate knowledge of the procedural or factual history of the case. Alternatively, it could stem from the fact that Juniper's counsel has a blatant disregard for its duty of honesty and candor toward the court. Regardless, because the portrait painted by Juniper's counsel is not an accurate depiction of the case now before this Court, GraphOn will devote this entire section of its Opposition to correcting the misstatements and errors committed by Juniper.

1.     Juniper claims that NES discontinued its software products after "utterly failing in the marketplace" for network security products. Motion, p. 1, ll. 6-7. Juniper has provided no support for this inaccurate statement. Like many start-ups from the same era, NES had great technology and products, but insufficient capital to keep the products in the market.

2.     Juniper claims that the NES portfolio has not fared well in the USPTO. Motion, p. 3, ll. 12-13. This also is not an accurate statement. It is true that the firewall family that is in

GRAPHON'S OPPOSITION TO
JUNIPER'S MOTION TO STAY
3:10-CV-01412-JSW

the 2007 Texas case received final Office Actions, which are currently on appeal.  Barnard Decl. ¶ 11.  However, GraphOn has received almost $10 million in licenses by enforcing its database patent family, which is just one part of the portfolio.  *Id.*

3.      Juniper claims that GraphOn withdrew its '336 patent from the Texas 2007 case when Juniper demonstrated the patent was invalid because of a priority defect.  Motion, p. 3, ll. 23-25.  Ms. Clifford's Declaration is not in support of the statement, but rather just claims the document was a true and correct copy.  In fact, GraphOn withdrew the '336 Patent after learning that the '336 Patent may be missing a link in its priority data through inadvertence in the prosecution process.  Motion for Leave to File First Amended Complaint (Dkt. # 29, the '384 Action").   GraphOn subsequently corrected the issue in the USPTO and the '336 Patent stands valid and enforceable.  Barnard Decl. ¶ 10, Exhibit 3.

4.      Juniper states:  "After having suffered these setbacks on its primary group of NES Portfolio patents, GraphOn filed another lawsuit against Juniper on four second-tier patents." Motion, p.1, ll. 16-18; p. 4, ll. 13-15.   First, GraphOn has not grouped its patents into primary or secondary tier patents in the manner described by Juniper.  It is true that most of the four patents involved in the 2009 Virginia countersuit are distinctly different from the ones involved in the Texas suit, but that is because they are from a different family involving different multi-homing technology.  Furthermore, the countersuit was not brought as a result of any alleged setback, but because Juniper infringed the patents-in-suit.

5.      Juniper states that the Eastern District of Texas transferred the 2007 case and the countersuit to this District.  Motion, p. 1, ll. 21-22.  This is an overly simplistic view of the case. As explained above, the Court initially refused to transfer the case because of Juniper's gamesmanship and posturing in both the Texas and Virginia courts.  However, after the Federal

GRAPHON'S OPPOSITION TO
JUNIPER'S MOTION TO STAY
3:10-CV-01412-JSW

1   Circuit came out with a line of cases addressing venue in patent cases, the Texas court

2   transferred the case to California.

3          6.      Juniper claims that, "Following transfer, ***this*** Court ordered the Texas case stayed

4   pending GraphOn's appeal of the PTO's rejection of all claims from the patents in that case."

5   Motion, p. 1, ll. 23-24.  This Court did not order the stay in the 2007 Texas case.  Furthermore,

6   the order was entered based upon a stipulated agreement of the parties to stay that case because

7   of Juniper's agreement to be bound by its results and a final Office Action, which GraphOn is in

8   the process of appealing.   Barnard Decl. ¶ 11.

9          7.      Juniper claims that the only non-stayed patents currently at issue are the four in

10  this present action.  Motion, p. 1, ll. 24-25.   For clarification, Juniper presumably is limiting this

11  statement to patents at issue between Juniper and GraphOn.  GraphOn has other patents that are

12  not in reexamination that have been successfully litigated, despite Juniper's attempts to

13  characterize the reexamination proceedings as including the entire NES portfolio of patents.  *See*

14  Motion, p. 2, ll. 13-14.

15         8.      "This litigation is in its earliest stages and the parties have not had an initial

16  conference, prepared a discovery plan related to GraphOn's claim, or even completed their initial

17  disclosures for GraphOn's claim, much less the disclosures required by the Local Patent Rules."

18  Motion, p. 2, ll. 22-26.  These statements are inaccurate, which Juniper's counsel was informed

19  of during the preparation of the Joint Case Management Statement.  Barnard Decl. ¶ 12.

20  Apparently undeterred and unwilling revise its draft Motion before filing it with the Court,

21  counsel refused to investigate the veracity of its statements when a simple review of the docket

22  sheet (Dkt #83) would have indicated these statements to the Court were not true.  Both the

23  Scheduling Order and the Discovery Plan were entered in this case over a year ago on May 18,

24

25

26

27

28                                                         20

2009 and June 3, 2009, respectively.  Initial Disclosures were served on June 18, 2009.  Juniper has admitted that its disclosures included the general legal theories and factual bases, persons having knowledge of the relevant facts, and documents relevant to the lawsuit.  *See* Joint Case Management Statement, p. 6.  Finally, GraphOn has timely made P.R. 3-1 and 3-2 Disclosures pursuant to the very similar Texas patent local rules, which were applicable at the time of the disclosures.  In fact, GraphOn's first filing in the Texas court, was a notice that it had complied with P.R. 3-1 and P.R. 3-2 and served its infringement contentions on August 26, 2009.  *See* Notice of Compliance (Dkt. #59).

**IV.    CONCLUSION**

For the reasons stated above, GraphOn respectfully requests this Court DENY Juniper's Motion to Stay.

Dated:  August 27, 2010

By:  /s/ Michael D. Rounds
Michael D. Rounds
Melissa P. Barnard
Adam K. Yowell
WATSON ROUNDS
One Market-Steuart Tower Suite 1600
San Francisco, CA 94105
Telephone:  (415) 243-4090
Email:  mrounds@watsonrounds.com
          mbarnard@watsonrounds.com
          ayowell@watsonrounds.com

Joseph M. Vanek
Jeffrey R. Moran
VANEK, VICKERS & MASINI
111 s. Wacker Drive,Suite 4050
Chicago, IL 60606
Telephone:  (312) 224-1500
Email:  jvanek@vaneklaw.com
          jmoran@vaneklaw.com

*Attorneys for Plaintiff GraphOn Corporation*

21

GRAPHON'S OPPOSITION TO
JUNIPER'S MOTION TO STAY
3:10-CV-01412-JSW

1

2

**CERTIFICATE OF SERVICE**

3

The undersigned hereby certifies that all counsel of record who are deemed to have

4

consented to electronic service are being served on today's date with a copy of this document via

5

the Court's CM/ECF system per Local Rule CV-5-5(b) and 5-6(2).

6

7

Dated: August 27, 2010.

8

9

_____/s/ Robert Hunter_____
An Employee of Watson Rounds

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22

GRAPHON'S OPPOSITION TO
JUNIPER'S MOTION TO STAY
3:10-CV-01412-JSW